# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| BRENDA LEE SULLENDER,<br><br>Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant, | Case No.: 4:18-cv-00075-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Brenda Lee Sullender's Complaint/Petition for Review (Docket No. 1), seeking review of the Social Security Administration's decision denying her applications for Social Security Disability Insurance benefits and Supplemental Security Income for lack of disability. *See generally* Compl./Pet. for Review (Docket No. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On September 24, 2014, Petitioner Brenda Lee Sullender ("Petitioner") filed applications for Title II Disability Insurance benefits and Title XVI Supplemental Security Income, alleging disability beginning August 1, 2012. Both claims were denied on December 31, 2014 and, again, on reconsideration on March 13, 2015. On March 30, 2015, Petitioner timely filed a Request for Hearing. On February 15, 2017, Administrative Law Judge Stephen Marchioro held a hearing in Pocatello, Idaho, at which time Petitioner, represented by attorney Dan Bott appeared and testified. Impartial vocational expert, Sara Statz, also appeared and testified.

On March 22, 2017, the ALJ issued a Decision denying Petitioner's claim, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested

**MEMORANDUM DECISION AND ORDER - 1**

a review from the Appeals Council and, on December 15, 2017, the Appeals Council denied Petitioner's Request for Review, making final the ALJ's decision.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing that "[t]he conclusions and findings of fact of the [Respondent] are not supported by substantial evidence and are contrary to law and regulation." Compl./Pet. for Review, p. 2 (Docket No. 1). In particular, Petitioner argues that "[t]he [residual functional capacity assessment] is unsupported by substantial evidence because the ALJ failed to follow the treating physician rule and the [residual functional capacity] is not supported by any medical opinion." Mem. ISO Pet. for Review, pp. 7-13 (Docket No. 17). Petitioner therefore requests that the Court either reverse the ALJ's Decision and find that she is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See id*. at p. 13; *see also* Compl./Pet. for Review/Compl., p. 2 (Docket No. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla

**MEMORANDUM DECISION AND ORDER - 2**

but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

As to questions of fact, the Court's role is to review the record as a whole to determine whether it contains evidence allowing a reasonable mind to accept the conclusions reached by the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts within the medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving any ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence contained in the record (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

As to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. At the same time, the ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§

**MEMORANDUM DECISION AND ORDER - 3**

404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since August 1, 2012, the alleged onset date." (AR 18).

The second step requires a determination of whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If there is no severe medically determinable impairment or combination of impairments, benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ found that Petitioner has the following severe impairments: "ulcerative colitis and abdominal pain status-post hernia surgery." (AR 18).

**MEMORANDUM DECISION AND ORDER - 4**

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 19).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. On this point, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). In addition, the claimant is able to frequently climb ramps and stairs, but only occasionally climb ladders, ropes or scaffolds. the claimant also requires reasonable access to the bathroom in a normal office or factor environment, and the claimant would be off-task for 8 percent or less of a workday for bathroom breaks.

(AR 19).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). Here, the ALJ found that Petitioner is capable of performing past relevant work as an inspector-assembly party clerk and kitchen helper because such work does not require the performance of work-related activities precluded by Petitioner's RFC. *See* (AR 22-23). Therefore, the ALJ concluded that Petitioner "has not been under a disability, as defined by the Social Security Act, from August 1, 2012, through the date of this decision." (AR 23).

**B.     Analysis**

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *See Magallanes*, 881 F.2d at 750. The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Here, Petitioner argues that the ALJ did not give the appropriate level of deference to the opinions of her treating physician, David Beckstead, M.D. *See* Mem. ISO Pet. for Review, pp.

**MEMORANDUM DECISION AND ORDER - 6**

7-8 (Docket No. 17).  Relevant here, Dr. Beckstead's October 16, 2014 "Residual Functional Capacity Questionnaire" diagnosed Petitioner with "chronic pain/[abdominal] pain syndrome," indicating symptoms of abdominal pain, chronic gastritis, and irritable bowel syndrome, alongside a "poor" prognosis.  (AR 400).  Dr. Beckstead further concluded that Petitioner was limited to (1) lifting/carrying less than 10 pounds frequently and 10-20 pounds occasionally; (2) sitting 30 minutes at one time for a total of one hour in an eight-hour workday; and (3) standing 10 minutes at one time for a total of one hour in an eight-hour workday.  *See* (AR 400-01).  From such limitations, Dr. Beckstead opined that Petitioner could not work.  *See* (AR 400); *see also* (AR 417) (October 17, 2014 treatment note:  "All of these problems have resulted in a chronic pain syndrome and an inability lift or do any significant work."); (AR 432) (February 17, 2017 treatment note:  "All of these daily symptoms make it so that she cannot successfully work.").

      The ALJ essentially agreed with Dr. Beckstead's clinical observations, noting that Petitioner suffered from ulcerative colitis and abdominal pain and that such impairments were indeed severe.  *See* (AR 18).[1]  But the ALJ could not adopt Dr. Beckstead's opinion that Petitioner is altogether incapable of any employment whatsoever.  *See* (AR 21) ("The undersigned finds that objective medical evidence does not support the extreme degree of exertional limitations in [Dr. Beckstead's] opinion, and it is unclear what the claimant would be

---

[1] In this respect, the ALJ rejected the State agency medical consultants' assessments of Petitioner's impairments, who determined that the medical evidence failed to establish a severe impairment.  *See* (AR 21) ("While these opinions are based upon a thorough review of the available medical records and a comprehensive understanding of agency rules and regulations, the State agency medical consultants did not have the same opportunity as the undersigned to review the evidence submitted through the date of the hearing or to see and hear the claimant's testimony.  The undersigned finds that the evidence received at the hearing level is sufficient to find that the claimant's ulcerative colitis and abdominal pain status-post hernia surgery are severe impairments and determine her residual functional capacity. . . . .  Even though the undersigned finds that the severity and limitations of these conditions are not entirely supported by the objective medical evidence, the treatment record reasonably supports finding that these conditions more than minimally affect the claimant's ability to perform basic work activities.").

**MEMORANDUM DECISION AND ORDER - 7**

doing for the remaining six hours of an eight-hour day if she is only able to sit and be on her feet for a total of two hours.").

The Court finds no fault with the ALJ's ruling in that regard, particularly given the applicable standard of review. It is undisputed that the medical record is scant; this reality, by itself, cannot operate to reject Dr. Beckstead's opinions outright. However, owing to the very nature of Petitioner's impairments and limited medical corroboration, Dr. Beckstead's unequivocal conclusions concerning Petitioner's functional limitations are necessarily driven by Petitioner's own subjective complaints which the ALJ rejected as not credible (*see* (AR 20-21)) and which Petitioner does not contest here. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject treating doctor's opinion if it is based "to a large extent" on claimant's self-reports that have been properly discounted as not credible). Absent legitimate substantiating moorings, Dr. Beckstead's opinions on these points are revealed as overly vague and speculative. *See Bayliss*, 427 F.3d at 1216 (ALJ not required to accept medical opinion that is brief, conclusory, or inadequately supported by objective findings). In short, without more, Petitioner's understood impairments do not *ipso facto* amount to a disability determination. *See Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, [a claimant] must prove to us that you are blind or disabled.").[2]

This is particularly the case where, elsewhere in the record, Petitioner's daily activities reflect an inconsistency with a finding of disability. For example, despite Petitioner's contention

---

[2] Though concluding here that Dr. Beckstead's opinions are not supported by the record on the whole, the Court does not agree with the ALJ's apparent attempt at casting them as conflicting with the objective medical record by virtue of examinations showing "no deformities or tenderness in the extremities, normal motor function, a full range of motion of all joints and extremities, normal gait, and a soft non-tender abdomen." (AR 20-21). Petitioner's conditions would not clearly cause such problems. *See* Mem. ISO Pet. for Review, pp. 8-9 (Docket No. 17).

**MEMORANDUM DECISION AND ORDER - 8**

that, "for the rest of the day,"[3] she would "either be in the bathroom, reclining, or lying down" (Mem. ISO Pet. for Review, p. 9 (Docket No. 17)), the ALJ appropriately referenced that Petitioner is able to handle all personal care, prepare several-course meals, water the lawn, do laundry, drive, shop in stores, and clean the house. *See* (AR 20) ("As for activities of daily living, the undersigned finds that the claimant's reported activities of daily living are not as limiting as one would expect from an individual alleging complete diversity.") (citing (AR 265-73)). And, in post-alleged onset date treatment notes with the Nurse Practitioners of Preston, Petitioner (1) controls her diarrhea and constipation "quite well with diet" (AR 350, 352, 354); (2) "likes to ride motorcycles, fish, and work with horses" (AR 351, 353, 355); and (3) was "encouraged to exercise on a regular basis, especially in doing stomach crunches to help strengthen her back" (AR 355). The ALJ may discount the medical opinion where the prescribed restrictions were inconsistent with the level of activity maintained by the claimant. *See, e.g.*, *Lee v. Berryhill*, 2017 WL 6629018, *1 (9th Cir. 2017) (finding that ALJ provided specific and legitimate reasons to reject examining physician's opinions where claimant's "daily activities [were] inconsistent with [the physician's] conclusion that [the claimant] cannot work"); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (where claimant "indicated that she was able to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries," court found that "[a]n ability to perform such activities may be seen as inconsistent with the presence of a condition which would preclude all work activity").

Finally, although his treatment notes unquestionably paint the picture of a claimant suffering from multiple severe impairments (with which the ALJ agreed), such notes are not consistent justification for Dr. Beckstead's accompanying opinions concerning Petitioner's

---

[3] By this, Petitioner is referring to the six hours in an eight-hour workday where she is allegedly incapable of either sitting or standing, according to Dr. Beckstead. *See supra*.

**MEMORANDUM DECISION AND ORDER - 9**

functional imitations and related inability to work. In other words, the fact that Petitioner occasionally saw Dr. Beckstead for a litany of conditions operates only to establish that fact; if those treatment notes do not foretell Dr. Beckstead's opinion that Petitioner cannot work due to impairments, their import extends only so far. To be sure, as indicated by the ALJ, it is possible to interpret Dr. Beckstead's treatment notes as indicating that Petitioner's recognized severe impairments are managed with a consistent medication protocol. *See* (AR 22) ("Dr. Beckstead's treatment notes contain minimal physical observations, and Dr. Beckstead noted in May 2015 that the claimant was doing very well with her current Prednisone dosage.") (citing (AR 422) ("She is here for her monthly re-fill"; doing very well on pred.")); *see also* (AR 426) ("Went off meds and got sick; went back on, doing better."). Moreover, as also pointed out by the ALJ, despite her allegations of disabling pain, Petitioner did not see Dr. Beckstead "for seven months after a December 2015 visit." (AR 22). The ALJ properly relied on this reason to discount symptom testimony. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (ALJ properly considered treatment gap in assessing claimant's symptoms); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ properly relied on three- to four-month treatment gap in discrediting claimant's testimony).[4] Thus, a disconnect exists between Dr. Beckstead's treatment notes that merely highlight Petitioner's medical conditions on the one hand, and his assertion that Petitioner is effectively disabled as a result of those conditions on the other hand.

---

[4] Petitioner argues that her "conservative treatment and infrequent office visits actually support her claims for disability, as she cannot afford the treatment that would likely help her improve so that she could work." Mem. ISO Pet. for Review, pp. 9-10 (Docket No. 17) (citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (claimant's failure to receive medical treatment during period that he had no medical insurance could not support adverse credibility finding.")). However, such an argument not only highlights Dr. Beckstead's reliance on Petitioner's self-reports (*see supra*), it also is belied by office visits during the same seven-month stretch for *other* issues, including an injured rib (AR 424), and a cough with congestion (AR 427). *Cf.* (AR 409-10, 412) (indicating Petitioner's office visits with Dr. Beckstead for urinary tract infection and sore throat, albeit in 2014).

**MEMORANDUM DECISION AND ORDER - 10**

The Petitioner suffers from several impairments (acknowledged as "severe" by the ALJ (*see* (AR 18)) that impact her ability to work; however, the ALJ provided clear and convincing reasons for rejecting/questioning Dr. Beckstead's opinions. These opinions were not given the weight Petitioner argues that they deserved, but such opinions clearly were considered in the context of the surrounding medical record. The Court's duty here is not to ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court must decide whether the ALJ's decision that Petitioner is not disabled is supported by the record. In this record, there are opinions, testimony, and accounts that inform the ALJ's decisions on how to consider Petitioner's claims. His decision to discount Dr. Beckstead's opinions is supported by clear and convincing, specific, and legitimate reasons. Hence, because the evidence can reasonably support the ALJ's conclusions in these respects, this Court will not substitute its judgment for that of the ALJ's even if this Court were to have a different view. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

## IV. **CONCLUSION**

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 f.2d at 1549.

The evidence relied upon by the ALJ can reasonably and rationally support the ALJ's well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence. Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is

supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V. <u>ORDER</u>

Based on the foregoing, IT IS HEREBY ORDERED that the decision of the Commissioner be AFFIRMED and that this action be DISMISSED in its entirety with prejudice.

DATED: June 17, 2019

_____
Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 12**